# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 8170 | DATE | 3/29/2004 |
| CASE TITLE | U.S. ex rel. LaDarryl Hannon v. Mark A. Pierson | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner LaDarryl's Petition for a Writ of *Habeas Corpus* (doc. # 1-1)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] After careful consideration of the entire record, Petitioner LaDarryl's § 2254 petition for a writ of *habeas corpus* [1-1] is DENIED. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 30 2004 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | JXM | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LaDARRYL HANNON,<br><br>Petitioner,<br><br>v.<br><br>MARK A. PIERSON,<br><br>Respondent. | Case No. 99 C 8170<br><br>Judge William J. Hibbler |

DOCKETED
MAR 3 0 2004

## MEMORANDUM OPINION AND ORDER

LaDarryl Hannon ("Petitioner") was convicted by an Illinois jury of first-degree murder and sentenced to thirty-eight years in prison. After the Illinois Appellate Court affirmed his conviction and the Illinois Supreme Court denied his petition for leave to appeal, Petitioner filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner claims that the trial court abused its discretion by allowing the prosecutor to cross-examine his mother on matters outside her direct testimony and that his trial counsel was ineffective for failing to move to quash his arrest. For the following reasons, Petitioner's petition for writ of habeas corpus is DENIED.

### I.     Factual Background

When ruling on a petition for writ of habeas corpus, the Court presumes that the factual findings of the state court are correct. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002); 28 U.S.C. §2254(e)(1). Because Petitioner does not challenge the Illinois Appellate Court's factual determinations in his petition, the Court adopts the facts as set forth in *People v. Hannon*, No.

1-97-0543 (Ill. App. Ct. Mar. 31, 1999) (unpublished Rule 23 Order).

On June 3, 1993, the body of Elizabeth Reeves was found, fatally shot. Detective Foley investigated the scene. At trial, Foley testified that during his investigation he spoke to a police sergeant at the scene, who gave Foley Petitioner's phone number because he was a potential witness. Foley went to talk with Petitioner, who was 15 years old at the time. Foley showed him a picture of the victim. Petitioner said he recognized the victim but did not know her name, that he had seen two individuals running from the crime scene on June 2, and that he had not been at the crime scene the day the body was found.

On June 5, 1993, Foley returned to Petitioner's home and asked him to come to the police station to identify the individuals he saw running from the scene. Petitioner agreed. Foley informed Petitioner's aunt and asked her to contact Petitioner's mother. Foley placed Petitioner in his squad car and gave him Miranda warnings. Foley then confronted Petitioner, saying he believed Petitioner had lied to him about not being at the crime scene the day the body was found because a sergeant had spoken to Petitioner on the scene. Petitioner admitted he had lied and then said he was present when the victim was shot. Foley then took Petitioner to the police station, where the Petitioner made a second statement in front of a youth officer. Foley then called an assistant state's attorney, Peggy Chaimpas, and Petitioner's mother.

After Petitioner and his mother spoke for half an hour, Petitioner gave a written statement to Chaimpas. At trial, Chaimpas testified that she took the statement from Petitioner in the presence of his mother, the youth officer, Foley, and Foley's partner. Chaimpas wrote out the statement and made corrections, which were signed and initialed by the Petitioner and his mother. In the statement, Petitioner confessed that he had shot the victim. Petitioner stated that he was a member of the Black

Disciples street gang and that on the night of June 2, 1993, he left home around 11:30 p.m. with two members of the gang, went to the victim's house, and fired six shots at the victim.

Before trial, Petitioner's counsel moved to suppress Petitioner's statements on the grounds that Petitioner was incapable of understanding the Miranda warnings, and therefore the statements were involuntarily given. Psychological tests were ordered. At the suppression hearing, the parties stipulated that Dr. Michael Rabin would testify that he attempted to examine the Petitioner on December 8, 1995, but that he was uncooperative. Dr. Rabin was unable to form an opinion on whether Petitioner understood the Miranda warnings because Petitioner refused to answer questions, and he denied knowing the charge against him, whether he had an attorney, and even his own date of birth. A second doctor, Dr. Roni Seltzberg, examined the Petitioner on August 22, 1996, and determined that Petitioner had a history of learning disabilities, but that on the date of examination Petitioner was able to comprehend his Miranda rights. The trial court denied the motion to suppress the statements, stating, "it is apparent…that the defendant is attempting to avoid the results of his statement, which was freely and voluntarily given."

At trial, Petitioner's mother testified that Petitioner was home the night of June 2, 1993. Petitioner's mother testified that she was watching TV and was certain Petitioner did not leave the house between 10:30 p.m. and 2:30 a.m. On cross-examination, the prosecutor asked the mother about her silence when she was in the room while Petitioner gave his statement confessing to murder. Defense counsel objected that the State was not trying to impeach the mother, but rather was trying to bolster the authenticity of the statement. The court overruled the objection. The mother said she saw the state's attorney writing down what her son was saying, but that she was not paying attention because she was crying and telling her son to tell the truth. The prosecutor also

3

asked the mother if she ever told the police that her son was with her on June 2. The mother answered, "they didn't even ask me none of that." The mother also said she signed the statement and initialed the corrections, but did not read it.

## II. Procedural History

The jury found Petitioner guilty of first-degree murder, and the trial judge sentenced him to 38 years in prison. On direct appeal, Petitioner raised two issues: (1) that the trial court abused its discretion in allowing the prosecutor to cross-examine his mother regarding her actions while he confessed; and (2) that he was denied effective assistance of counsel because his attorney at trial should have moved to quash his arrest as unlawful. The Illinois Appellate Court affirmed Petitioner's conviction and sentence on March 31, 1997. The appellate court found that the State properly impeached Petitioner's mother with her failure to speak to the police when her son made a confession known to her to be false. The appellate court also found that Petitioner's assistance of counsel was not ineffective because his attorney did file a pre-trial motion to suppress his confession and actively challenged the veracity of the confession during trial. On October 28, 1999, the Illinois Supreme Court denied Petitioner's petition for leave to appeal from the decision of the state appellate court.

On December 13, 1999, Petitioner petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. §2254. In his *pro se* petition, Petitioner again raised the following issues: (1) the trial court abused its discretion in allowing the prosecutor to cross-examine his mother regarding her actions while he confessed, and (2) he was denied effective assistance of counsel because his attorney at trial should have moved to quash his arrest as unlawful.

4

## III. Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, this statute governs the grant of a writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). A petitioner is only entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court. *Id.* at 405-06. In order to show that a law was unreasonably applied by the state court, the petitioner must show that the court identified the correct legal rule, but unreasonably applied it to the facts of the case. *Id.* at 407; *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir. 2001).

## IV. Analysis

### A. Petitioner's allegation that the trial court abused its discretion in allowing the prosecutor to cross-examine his mother regarding her actions while he confessed.

Petitioner alleges that the trial court abused its discretion when it allowed the State to cross-examine his mother regarding her actions while he confessed. Cross-examination is the primary way to test the credibility of a witness and the truth of his or her testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). "Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i. e., discredit, the witness." *Id.* A prosecutor may even

5

impeach a defense witness by that witness' prior silence, without any constitutional violation. *See United States v. Zouras*, 497 F.2d 1115, 1120 (7th Cir. 1974), (citing *Couch v. United States*, 409 U.S. 322, 328 (1973) ("The Constitution explicitly prohibits compelling an accused to bear witness "against himself"; it necessarily does not proscribe incriminating statements elicited from another."))

Petitioner has not shown that allowing the State to cross-examine Petitioner's mother regarding her failure to tell police of his alibi was either "contrary to" or "an unreasonable application of" clearly established federal law. Rather, the state court acted in accordance with the cases that hold it is proper to impeach a defense witness by that witness' prior silence. *Zouras*, 497 F.2d at 1120. Petitioner's counsel objected to the line of questioning as being outside the scope of the direct testimony and an improper attempt to bolster the authenticity of the Petitioner's statement. The trial court overruled Petitioner's objection. On appeal, the Illinois Appellate Court found that the State properly impeached Petitioner's mother with her failure to tell the alibi to the police when present at the police station while her son confessed to murder. The state appellate court also concluded that the fact that she told her son to tell the truth further impeached her testimony because it was inconsistent with her failure to speak when her son confessed to something she knew to be false. This Court agrees with the state appellate court and finds that the cross-examination of Petitioner's mother was proper impeachment that went directly to her credibility and the veracity of her testimony. Therefore, the trial court did not abuse its discretion.

**B.   Petitioner's allegation that he was denied effective assistance of counsel because his attorney at trial should have moved to quash his arrest as unlawful.**

Petitioner next alleges that he was denied effective assistance of counsel because his attorney at trial should have moved to quash his arrest as unlawful. In *Williams*, the Supreme Court identified

the *Strickland* test as the proper standard of review for ineffective assistance of counsel. 529 U.S. at 390. To establish ineffective assistance of counsel, a defendant must show both that: (1) his attorney's performance was ineffective; and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Under the first prong, ineffective performance exists when an attorney's actions fall below an objective standard of reasonableness. *Id.* at 688. The reviewing court must determine if the attorney's actions were within the range of professional competence demanded of attorneys in criminal cases, *id.* at 687, or part of sound trial strategy. *Id.* at 689. Under the second prong, a defendant's case is prejudiced when there is a reasonable probability that if not for the attorney's ineffective performance, the result in the case would be different. *Id.* at 694.

The appellate court correctly identified the *Strickland* test as the standard for review of ineffective assistance of counsel. Under the first prong of the test, the court found that Petitioner's assistance of counsel was not ineffective because his attorney did file a pre-trial motion to suppress his confession and actively challenged the veracity of the confession during trial. His attorney ordered psychological tests and presented testimony on Petitioner's inability to comprehend the Miranda warnings. At trial, the attorney presented alibi witnesses and advocated his client's position that he gave a false confession to increase his standing in the gang. The appellate court found that trial counsel did not have to raise every conceivable issue, and that Petitioner's attorney had vigorously represented his client. The Court agrees and finds that Petitioner's counsel was not ineffective. The appellate court's decision was not "contrary to" or "an unreasonable application" of clearly established federal law.

Moreover, even if his counsel was found to be ineffective, Petitioner is unable to meet the

second part of the *Strickland* test, showing that he was prejudiced by counsel's error. In this case, Petitioner gave three voluntary statements to police saying he shot the victim, and corroborating testimony put him at the scene of the crime. Also, while Petitioner now asserts that he was unlawfully arrested at his home by police, Petitioner testified at the pre-trial hearing that his place of arrest was the police station, and that the reason the police wanted him to accompany them to the station was because he was a witness. Once Petitioner was in the vehicle, he confessed to lying to police and told officers he had been present when the victim was shot. Once officers heard this, they had probable cause to arrest him. Based on this evidence, if Petitioner's attorney had moved to quash his arrest at his home as unlawful, this motion would have been without merit. Therefore, the attorney's failure to bring this motion would not have changed the result in the case, and thus the Petitioner was not prejudiced.

As such, Petitioner has not met the *Williams* criteria of showing that the court failed to identify the correct law, or that the court unreasonably applied the correct law to the facts of the case. On the contrary, the Illinois Appellate Court properly identified and utilized the *Strickland* test. Therefore, the state court decision on the ineffective assistance of counsel claim is not "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court under *Williams*.

## V. Conclusion

Both of Petitioner's claims are without merit. His petition is therefore DENIED, and this case is dismissed with prejudice.

IT IS SO ORDERED

Dated: 3/28/04

William J. Hubbler, District Judge